L. Barron Hill, J.
This is an action for a declaratory judgment. On May 28, 1955 one of the defendants, Thomas P. O’Connor, made application in writing for a motor vehicle liability insurance policy under the New York Automobile Assigned Risk Plan since he was unable to obtain insurance through normal channels. The application sworn to before a notary public contained among other things the following question:
“ 15. Has applicant (or anyone who usually drives the applicant’s motor vehicle) been convicted or forfeited bail at any time during the immediately preceding thirty-six months for any of the following offenses? (Answer ‘Yes’ or ‘No’ for each item and if bail was forfeited, answer ‘ Yes bail ’ for that item).
“ (m) Any other offense not arising out of operation of a motor vehicle. (If Yes, give details for each offense on a separate sheet)..................no ”.
This application was forwarded to headquarters of the Assigned Risk Plan, which in turn and in accordance with the rules of the plan, assigned the risk to the ¿Etna Casualty and Surety Company (hereafter called ¿Etna Co.) which was received on June 6, 1955. On June 8, 1955, defendant O’Connor was notified that the ¿Etna Co. had issued to him its motor vehicle liability policy for the period commencing June 8, 1955, and ending June 8,1956. The terms and conditions of the policy are in the standard form.
On March 4, 1956 defendant O’Connor’s automobile covered by the policy was involved in an accident as a result of which defendants Millie and Perley Hamilton sustained personal injuries and the defendant Millie Hamilton sustained property damage. Defendant O’Connor reported the accident to the ¿Etna Co. and on April 16, 1956, after an investigation, the ¿Etna Co. rescinded the policy, returned the premium with interest to O’Connor, and notified him in writing of the recission for the reason that plaintiff learned, after the accident, that *834 O’Connor’s answer to question “ 15 (m) ” was false. There is no dispute that O’Connor was convicted on four occasions for disorderly conduct and public intoxication during the 36-month period prior to the application.
The 1946 New York State Legislature (L. 1946, ch. 467), recognizing that some motorists entitled to insurance are unable to obtain same through regular channels, enacted section 63 of the Insurance Law and called it ‘ ‘ Assigned Bisk Plans”; “ § 63. * * * The superintendent shall, .after consultation with the insurers, licensed to write motor vehicle liability insurance in this state, approve a reasonable plan or plans for the equitable apportionment among such insurers of applicants for such insurance who are in good faith entitled to but are unable to procure insurance through ordinary methods and, when such plan has been approved, all such insurers shall subscribe thereto and shall participate therein. Any applicant for such insurance, any person insured under such plan and any insurer affected may appeal to the superintendent from any ruling or decision of the manager or committee designated to operate such plan. All orders of the superintendent shall be subject to judicial review as provided in section thirty-three of this chapter.”
Prior to the enactment of section 63 of the Insurance Law, the insurance companies doing business in New York State .operated a similar voluntary plan. After 1946 all insurance companies licensed to do business in the State were required to subscribe to the plan.
The provisions of the plan applicable to this action are as follows:
Section 9. *' 3' * A risk shall not be entitled to insurance nor shall any subscriber be required to afford or continue insurance under the following circumstances:
(A) If the applicant or anyone who usually drives the automobile is engaged in an illegal enterprise, or has been convicted of any felony or high misdemeanor during the immediately preceding thirty-six months or habitually disregards local or state laws as evidenced by two or more non-motor vehicle convictions during the immediately preceding thirty-six months. * * *
See. 14. 'Garners Notice to Applicant. * * * (a) Issue a policy or a binder if all information necessary for the carrier to fix the proper rate is contained in the application form, such policy or binder to become effective 12:01 A.M. on the day following the second working day, or * * *.
See. 18. Cancellations.
(A) Cancellation at Request of Insured. If for any reason the insured requests cancellation, the carrier shall retain the short rate earned premium for the period covering or the sum of $10.00 per car, whichever is greater, and return the balance to the insured.
*835 (B) Cancellation by Company. A carrier which has issued a policy or binder under this Plan, shall have the right to cancel the insurance by giving notice as required in the policy or binder if the insured
(1) is not or ceases to be eligible or in good faith entitled to insurance, or '
(2) has failed to comply with reasonable safety requirements, or
(3) 'has violated any of the terms or conditions upon the basis of which the insurance was issued, or
(4) has obtained the insurance through fraud or misrepresentation, or
(5) has failed to pay any premium due under the policy.
Each such cancellation shall be on a pro rata basis, subject to the minimum charge of $10.00 per car, and a copy of each such cancellation notice shall be furnished to the producer of record. A statement of facts in support of each such cancellation shall be furnished to the Manager and, except in the ease of cancellation for nonpayment of premium, to the Superintendent of Insurance of the State, ten days prior to the effective date of cancellation.
Cancellation shall be effective on the date specified and coverage shall cease on such date.
Section 19. Right of Appeal. An applicant denied insurance or an insured given notice of cancellation of insurance under the Plan, may appeal such action to the Committee. Each notice of cancellation or denial of insurance shall contain dr be accompanied by a statement that the insured or applicant has a right of appeal to the Governing Committee of the Plan. A subscriber to the Plan shall also have the right of appeal to the Committee.
The action of the Committee may be appealed to the Superintendent of Insurance of the State.
The Manager shall promptly notify the company, the insured or applicant, and the producer of record, of the disposition of the appeal, which notification in the case of refusal to sustain a cancellation shall include notice that upon payment of the deposit premium to the insurer a policy or binder will be issued.
An appeal shall not operate as a stay of cancellation, provided, however, that if either the Committee or the Superintendent of Insurance refuses to sustain the cancellation, the carrier which issued the policy or binder shall, within two working days after receipt of the deposit premium, provided such deposit premium is received within 30 days after determination of the appeal, issue a new policy or binder effective for a period of one year from the date of issuance of such new policy or binder. The balance of the premium shall be payable as provided in Section 14.
Had .¿Etna Co. known of O’Connor’s police record it could, under the terms of the Plan, have refused the application. It could also have cancelled the policy at any time for the same reason, i.e., “ during the period of thirty-six months prior to the application convicted on four occasions of disorderly conduct and drunkenness ”.
The question at bar is recission.
Plaintiff .¿Etna Co. prays a judgment:
“ * * * 2. A determination that by reason of the untrue, sworn representations set forth in the application, the plaintiff was, and is, relieved of any obligation to defend or indemnify O’Connor for any judgment arising *836 out of the ownership, maintenance or use of the motor vehicle during the policy period.
3. A determination that plaintiff is not obligated to defend any action brought by or on behalf of Perley Hamilton and Millie Hamilton ag’ainst Thomas P. O’Con-nor or pay any judgment obtained against said Thomas P. 0 ’Connor.
4. A determination that the rights of defendants, Perley Hamilton and Mills Hamilton against the plaintiff are no greater than the rights of defendant Thomas P. O’Connor against the plaintiff; and
5. A determination that Perley Hamilton and Millie Hamilton have no right of action against the plaintiff.”
There is no dispute here that an insurance company has the right to rescind a policy secured voluntarily if obtained through fraud or misrepresentation. Defendants claim that a policy of insurance secured through, the Assigned Bisk Plan is not secured voluntarily, therefore, may not be rescinded.
Joseph Oster, an Associate Attorney of the New York State Department of Insurance, who passes on all legal questions involving the Assigned Risk Plan, testifies that no insurance company has the right to rescind a policy obtained through fraud or misrepresentation if obtained under the Plan and that no insurance company had ever claimed such right. Mr. Oster also testified that although a majority of the States operate an Assigned Risk Plan, he knew of no case where an insurance carrier had attempted to rescind on the grounds of fraud or misrepresentation and no such case has been called to the court’s attention.
It appears clear that the architects of the “Plan” had in mind that one not “ able to obtain insurance through regular channels ” might misrepresent. Section 18 of the Plan so contemplated: “ (4) has obtained the insurance through fraud or misrepresentation”. The only course open to the HDtna Co. is cancellation. “ Cancellation shall be effective on the date specified and coverage shall cease on such date ”.
The JEtna Co. has made no attempt to comply with sections 18 and 19 of the Plan, i.e., Cancellation and Right of Appeal.
The Appellate Division of the First Department, in Lauritano v. American Fire Ins. Co. (3 A D 2d 564), stated, at pages 567-568: “ At one time, the liability insurance policy was regarded as the concern only of the insured and his insurer, as exclusive parties to the contract. Any act or omission by the insured which would have released his insurer from liability would inevitably have precluded recovery by those whose claims *837 against the insurer were wholly derivative. However, the Legislature, recognizing that an injured party, while not privy to the insurance contract, had a genuine interest in it and should be enabled to invoke its protection, enacted section 109 of the Insurance Law, forerunner of the present section 167, to create, as its heading indicates, an independent right of the injured person to proceed directly against the liability insurer (L. 1917, ch. 524). Successive amendments have profoundly altered what was once commonly accepted — that the liability policy existed solely for the protection of the insured.
‘1 Today the injured party is no longer wholly dependent upon the diligence and conscientiousness of the person who caused him injury. It was precisely because accident victims could be deprived of all possibilities of recovery through the irresponsibility, obduracy or neglect of the insured that section 167 of the Insurance Law was amended ”.
Plaintiff has no greater rights than that accorded it under the provisions of the New York Automobile Assigned Risk Plan and, since under the plan it may not rescind a policy of insurance, I find that the policy of insurance issued to Thomas O’Connor by plaintiff was in force at the time of the accident between O’Connor’s car and the Hamilton car, that plaintiff must defend the action brought by the Hamiltons against O’Connor and plaintiff must pay any judgment obtained within the limits of the policy.
This constitutes the decision of the court pursuant to section 440 of the Civil Practice Act.